A. E. COOK, Appellee, v. W. R. MILLIMAN, Sheriff, Appellant.

**ATTACHMENT:** **Lien—Limitation.** Principle reaffirmed that the lien
1  of an attaching creditor is limited to the interest, if any, of the
   defendant in attachment.

**TRIAL:** **Evidence—Exclusion of Testimony.** Error may not be predi-
2  cated on the exclusion of a question, in the absence of any showing
   as to what the answer would have been.

**TAXATION:** **Listing Property as Evidence of Title.** The listing of
3  property and the paying of taxes thereon are not admissible in
   evidence to prove title.

*Appeal from Harrison District Court.*—G. W. CULLISON, Judge.

APRIL 1, 1924.

REHEARING DENIED DECEMBER 11, 1924.

ACTION in replevin. Verdict for plaintiff by direction of the court. Defendant appeals.—*Affirmed.*

*Bolter & Murray,* for appellant.

*John J. Hess,* for appellee.

STEVENS, J.—This is an action for the replevin of a large quantity of grain, live stock, and other farm property from the sheriff of Harrison County, who held the same under a writ of attachment issued at the suit of the Little Sioux
1. ATTACHMENT: Savings Bank against J. E. Woodin. A. E.
lien: limitation. Cook, appellee, resides in Chicago, Illinois, and owns and operates farms in various sections of the United States, under an arrangement which he described in his testimony as a "system." J. E. Woodin entered into and became a part of

this "system" about twelve years prior to January, 1921, when he departed for parts unknown. At the time of his departure, he was indebted in a considerable sum to the Little Sioux Savings Bank, to recover which an action was instituted in the district court, aided by attachment. Cook, as stated, replevined from the sheriff the property attached, and the issue tried in the court below was the ownership of the property. On account of the absence of Woodin, appellant was compelled to call and rely upon the testimony of appellee to defeat his claim that he was the absolute owner of the property. The testimony of appellee and an employee of his by the name of Staton, who appears to hold the position in the "system" of general superintendent, is evasive, more or less indefinite and uncertain, and therefore difficult to clearly understand. Woodin is referred to in the testimony of Staton as an employee, but is not so definitely denominated by appellee. Woodin was a married man, residing with his family, at the time of his departure, on a farm owned by appellee in Harrison County. The farm was well stocked and equipped with grain and farm implements. Appellee described the arrangement between himself and Woodin as a sort of "tentative" working agreement. Woodin was not recognized as a tenant, and only in a sort of indirect way as a hired man. The "system" described by appellee, so far as its workings are disclosed by his testimony, was, applying it directly to Woodin, about as follows: Staton received Woodin into the "system" for appellee about 1909. Woodin worked on various farms of appellee's in Minnesota, Kansas, and Iowa. He was paid no wages, and received no part of the income of the farm. Appellee furnished and paid for all stock and farm equipment used on the premises occupied by Woodin, to whom the same was charged. Woodin could not retain any portion of the income from the farm. Appellee, in a letter written to Woodin May 26, 1916, said:

"We are agreeing to forward you such allowance as you will require, but we cannot permit you to retain a single penny of the proceeds from the sale of goods from the farm."

Advances of small sums were made by appellee from time to time. Exhibit 9, offered in evidence by appellant, is a statement

of the account for several years, as rendered by appellee to Woodin. Woodin is frequently charged therein with cash advances of $40. When the crops were marketed, the proceeds were forwarded to appellee, as were the proceeds received from the sale of stock, milk, or any other product of the farm. All advances made by appellee for the expense of operating the farm, and all implements and stock purchased and placed thereon, and the sums advanced to him for living expenses, were charged to Woodin, as were also Staton's expenses of frequent visits to the farm. Staton directed the purchase and sale of everything received at or removed from the farm. Woodin was credited with one half of the amount received from the sale of milk and from the sale of crops grown on the farm. If Woodin advanced any money to defray the expense of farm operations, he was credited therewith on the account kept by appellee. Frequent balances were struck in the account, always showing Woodin indebted to appellee. Woodin was charged, from time to time, with interest on the account. This arrangement is described as "tentative." The only real agreement between the parties appears to have been the elusive promise on the part of appellee that, whenever the net profits derived from the farm equaled one half of the value of the stock and farm implements thereon, he would execute a bill of sale to Woodin for a one-half interest therein. Before, however, this promise would be fulfilled, appellee must be reimbursed for all expense and outlay on his part, including sums advanced for the living expenses of Woodin and his family. There was, however, one other promise made by appellee, and that was that if, at any time, Woodin became dissatisfied with the arrangement, he could quit, and all promises made to him by appellee would be forgotten by the latter. The net result of the arrangement was that Woodin, by running away or quitting, obtained whatever sums appellee had advanced to him and that had been consumed by the family, without the fear of being subjected to an action for the return of the amounts thus advanced for living expenses.

The arrangement recalls a custom that prevailed at one time to some extent in this country. It is now obsolete. Under it, a sturdy youth was bound to a neighbor or relative to work,

until he attained his majority, for his board and clothes, and, at the end of the term, a team of horses and harness. The systems differ in some particulars. Under the ancient custom, the youth obtained his board, such as it was, and it was not charged to him; some clothing, and this was not charged to him; and sometimes the promised team and harness. The title to all of the property purchased by appellee and placed upon the farm remained in him.

Such is the effect of the testimony, offered in part by appellant, as we understand it. After twelve years of toil and labor, Woodin was, except for the large amount he owed the bank, at about the point from which he started when he entered the "system." He owned nothing, and, by quitting, his account with appellee was balanced. He had been credited upon the account with one half of the proceeds of. the products of the farm, but all of this was absorbed by the other side of the account. All of the stock and the farm implements were purchased and paid for by appellee. The increase of stock belonged to him. As the implements, the cost of which had been charged to Woodin, were supplanted by new ones, the cost thereof was charged to Woodin.

It is insisted by appellant that the jury may have drawn the inference from the several statements, each of which showed the balance due, that Woodin was in fact the owner of the property. The evidence shows that the charge against Woodin on the accounts was as custodian, and not as the owner. No inference that could have been drawn from the form or substance of the account could have changed the result.

The law has long been settled in this state that the lien of an attaching creditor applies only to the interest of the debtor in the attached property. The authorities need not be cited. If the debtor had no interest in the property attached, no lien was secured by the attachment. The issue is between the owner of the property and a third party. The reasonableness or unreasonableness of the contract is not involved. What we have said in discussing the contract bears only upon the issue of ownership. The evidence is without dispute in this particular.

Several witnesses were called by appellant and asked to

detail conversations with Woodin as to the ownership of the property. These witnesses were not permitted to answer the questions propounded to them. This is assigned as error. Assuming, without deciding, that declarations of Woodin as to the ownership of the property were admissible, we cannot reverse because of error in the court's rulings on the objections interposed to this testimony. The record does not disclose what the answers of the witnesses would have been. The only offer made was in connection with what it was claimed one witness would testify to. This was not sufficient to raise an issue for the jury. The same state of the record exists as to questions propounded to the witness regarding conversations with Staton.

2. TRIAL: evidence: exclusion of testimony.

One other contention requires mention. Appellant offered to show that the property was taxed to Woodin, and that he had paid the taxes thereon for the years 1918 and 1919. The account rendered by appellee does not show a credit for these items, but there is an item under date of August 30, 1918, "Cash for personal expenses, $700," and another item under date of August 3, 1919, "Cash advanced on account for personal use, $800," and a similar item on April 10, 1920, $500. Sums advanced in this way may have been used by Woodin to pay taxes, as well as other expenses. That sums were advanced for the latter purpose is made clear by the letters written by appellee to Woodin. In any event, the listing of property and paying taxes thereon are not admissible in evidence to prove title. *Hatch v. Board of Supervisors,* 170 Iowa 82.

3. TAXATION: listing property as evidence of title.

Other matters discussed are disposed of by what we have already said. We shall not discuss them in detail. It follows that the judgment of the court below should be affirmed. It is so ordered.—*Affirmed.*

ARTHUR, C. J., PRESTON and VERMILION, JJ., concur.